UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MELZAR TI-SHAWN WILKINS,                          DECISION AND ORDER

                                    Plaintiff,          11-CV-6104 CJS (MWP)

            -v-

KELLY R. HERKY, KAITLIN BAILEY and
JEFFREY BANAS,

                                    Defendants.

_____

APPEARANCES

For Plaintiff:              Melzar Ti-Shawn Wilkins, *pro se*
                            10-B-3529
                            Collins Correctional Facility
                            Box 340
                            Collins, New York 14034-0340

For Defendants:             Anthony B. Targia, Esq.
                            Erie County Attorney's Office
                            95 Franklin Street, 16th Floor
                            Buffalo, New York 14202

INTRODUCTION

Melzar Ti-Shawn Wilkins ("Plaintiff) alleges that Defendants, all of whom were employed by the Erie County Central Police Services Forensic Laboratory, violated his federal constitutional rights by fabricating evidence used against him in a criminal action. Now before the Court is Defendants' motion for judgment on the pleadings. (Docket No. [#15]).  The application is granted and this action is dismissed.

BACKGROUND

This action involves the alleged introduction of false evidence against Plaintiff at a criminal trial.  The Amended Complaint [#6] refers to the underlying criminal proceedings and to the alleged false testimony that Defendants provided against him.  Accordingly, in

setting forth the facts below, the Court refers to the actual trial testimony, of Defendants and other witnesses, since Plaintiff clearly referred to it in his Complaint. *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(THK), 2013 WL 1197755 at *8-9 (S.D.N.Y. Mar. 25, 2013) ("In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may consider the full text of documents that are quoted in or attached to the complaint, or documents that the plaintiff either possessed or knew about and relied upon in bringing the suit.") (citations omitted); *see also, Vasquez v. City of New York*, No. 10 Civ. 6277(LBS), 2012 WL 4377774 at *1 (S.D.N.Y. Sep. 24, 2012). ("[A] court may consider 'documents attached to the complaint as an exhibit or incorporated in it by reference, ... matters of which judicial notice may be taken, or ... documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (*quoting Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993)).").   In that regard, it would defy logic to evaluate the sufficiency of Plaintiff's pleading based solely on his subjective characterizations of what Defendants supposedly said during the underlying criminal trial, when the actual record of what they said is before the Court and undoubtedly was available to him when he drafted the pleading. *See, Avon Pension Fund v. GlaxoSmithKline PLC*, No. 08–4363–cv, 343 Fed.Appx. 671, 674 n. 2 (2d Cir. Aug. 24, 2009) ("Although the transcript of Dr. Buse's statement and testimony are not attached to the proposed amended complaint, they may nevertheless be considered in ruling on a Rule 12(b)(6) motion as they are incorporated by reference.") (citation omitted); *see also, Bath Petroleum Storage, Inc. v. Market Hub Partners, L.P.*, 129 F.Supp.2d 578, 581 (W.D.N.Y.,2000) ("[A] plaintiff should not be permitted to survive a motion to dismiss and put a defendant to the trouble and expense of discovery simply by excluding highly relevant

facts and documents from its complaint."), *aff'd* 229 F.3d 1135 (2d Cir.2000) (table), *cert. den.* 532 U.S. 1037, 121 S.Ct. 1998, 149 L.Ed.2d 1001 (2001).

This action arises from the arrest of Plaintiff and his wife, following two police raids on their house in Buffalo, New York, in August 2007 and December 2007.   A search conducted in August 2007 turned up marijuana, cocaine, other controlled substances and a hand gun.   Plaintiff was found hiding in a cubby hole in the attic, and the gun was discovered hidden under a stair.   At trial, Plaintiff's defense was, in part, that the drugs found in August 2007 belonged to his wife.   In that regard, in Plaintiff's defense, his wife testified at trial that she possessed the marijuana, cocaine and "Lortabs" for her own personal consumption. *See*, [#17-6] at 556 ("They were my Lortabs, I had a bag of marihuana.   And I had probably thirty to fifty dollars' worth of crack cocaine.").   Significantly, therefore, the issue at trial was not whether the items seized were actually illegal drugs, but rather, the issue was whether *Plaintiff* possessed them, as he was charged with doing.   Plaintiff admitted possessing a certain amount of marihuana.   The jury convicted Plaintiff of criminal possession of a weapon in the second degree, resisting arrest and unlawful possession of marijuana. *See, People v. Wilkins*, 104 A.D.3d 1156, 960 N.Y.S.2d 776 (4th Dept. 2013).

The second raid of Plaintiff's house was in December 2007, after which Plaintiff was charged with Criminal Possession of a Controlled Substance in the Third Degree, Unlawful Possession of Marihuana, Criminal Possession of a Controlled Substance in the Fourth Degree and Criminally Using Drug Paraphernalia in the Second Degree.   Amended Complaint [#6] at ¶ 4-5.   Apparently, the controlled substance was cocaine base, and drug paraphernalia was digital scales.   On March 19, 2008, an Erie County Grand Jury indicted Plaintiff on the aforementioned charges.   At trial, Plaintiff admitted being in the house at the

3

time of the search and seizure, but he denied that any drugs found were his.  To the contrary, Plaintiff suggested that the drugs may have belonged to his wife, who he indicated was a drug addict and who had overdosed that day, or possibly to his teenage son, who he had thrown out of the house for having drugs. *See*, [#17-7] at 587-588, 590-591.  In any event, Plaintiff did not deny the presence of the drugs, though he did deny knowing whose they were. *Id*. at 591-593.    On September 7, 2010, Plaintiff was acquitted after trial.

Plaintiff's Amended Complaint (Docket No. [#6]) represents his third attempt to set forth actionable claims arising from the foregoing events.  On March 1, 2011, Plaintiff, who is currently imprisoned and proceeding *pro se*, filed the original Complaint [#1], purportedly on behalf of himself, his wife and child.  Although difficult to understand, the original Complaint [#1] seemingly attempted to allege claims under 42 U.S.C. § 1983 arising from both of  the aforementioned criminal proceedings that were instituted against him.  The Complaint [#1] alleged claims of unlawful search and seizure, excessive force and malicious prosecution, against the Judges who presided over his cases, as well as his "private defense attorneys, Erie County prosecutors and Buffalo Police Department officials." Order [#3] at 1.  Included as a defendant was Kelly Herky ("Herky"), whom Plaintiff identified as a "forensic serologist."  The Court, acting *sua sponte* pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(a), dismissed most of the claims and gave Plaintiff an opportunity to file an amended complaint. *See*, Order [#3].  The Court gave Plaintiff specific instructions regarding the deficiencies of his Complaint [#1], and indicated that the remaining claims would be dismissed unless he filed an Amended Complaint that cured those deficiencies, by April 18, 2011. *Id*. at 10-11.

In response to that Order, Plaintiff filed a document entitled "Notice of Amended Case." (Docket No. 4).  The amended claim seemingly pertained just to the December 2007 arrest and subsequent prosecution.  Included as defendants were the Commissioner of the Buffalo Police Department, several police officers, and Herky.  The proposed amended pleading indicated that the police officers wrongly entered Plaintiff's home,conducted an illegal search and seizure, falsely arrested him, used excessive force and "manufactured evidence." *Id*. at 2.  The document further alleged that Herky manufactured evidence and tampered with test results. *Id*. at 4.

As an aside, and to provide context, documents that Defendants disclosed during discovery, indicate that in or about 2009 Herky was fired from her job with the Erie County Crime Lab for failing to perform a test in a certain case and then lying about it. See, Docket No. [#17-3]  at 457-460.  Herky performed testing on some of the evidence seized from Plaintiff's residence, though after her employment was terminated, the evidence was re-tested by another forensic chemist Kaitlyn Bailey ("Bailey") at the request of the Erie County District Attorney. See, [#17-4] at 470-481.  Another forensic chemist employed by the Erie County crime lab, Jeffrey Banas ("Banas") also performed testing on certain evidence seized from Plaintiff's home.  However, neither Bailey nor Banas was mentioned in Plaintiff's "Notice of Amended Case."

After Plaintiff filed his "Notice of Amended Case," the Court conducted another review pursuant to 28 U.S.C. § § 1915(e)(2)(B) and 1915A(a).  On June 27, 2011, the Court issued a Decision and Order [#5], indicating that Plaintiff had failed to comply with the Court's previous instructions.  Although the Court observed that Plaintiff had already "been given

several opportunities to correct deficiencies in his pleadings," it nevertheless granted Plaintiff until July 26, 2011 to file another amended pleading.

On July 21, 2011, Plaintiff filed the Amended Complaint [#6], which is now the operative pleading. The Amended Complaint [#6] purports to assert claims against Herky, Bailey and Banas, pursuant to 42 U.S.C. § 1983, arising from the December 2007 arrest and prosecution. The pleading alleges that Herky, Bailey and Banas were all employed at the Erie County Central Police Services Forensic Laboratory. The pleading alleges that Herky

> while acting as a forensic serologist . . . did not perform her duties in analyzing evidence that would have excluded the plaintiff, she failed to perform the necessary duties that is required in Lab testing and fabrication of evidentiary results in favor of the Erie County District Attorney's Office (Buffalo, New York) where the said defendant made findings of regular baking soda to be cocaine and/or derivative of cocaine. The defendant's actions and/or inactions were intentional and executed in a manner to cause the malicious and selective prosecution of the plaintiff[.]

Amended Complaint [#6] ¶ 7. The Amended Complaint does not allege that any test results by Herky were actually used against him in the criminal prosecution, and in fact the trial transcripts contained in the record indicate that they were not so used. Rather, as noted earlier, Bailey re-tested all of the evidence that was initially tested by Herky. There is also no indication in the record that Herky actually misidentified any substance that she tested. Moreover, Herky did not testify at trial.

As for the claim against Bailey, the Amended Complaint alleges that she

> gave fabricated conclusions on substances that were tested by falsely reporting that 'baking soda was a controlled substance, poured from the box into a plastic baggie admitted into evidence. That a scale never analyzed was admitted into evidence and she failed to retest results of a former employee [Herky] that had been dismissed for not following procedure. In fact she

6

signed her initials to something that she never analyzed into evidence, that a scale had tested positive for cocaine when in fact 'it was not cocaine.' She presented false testimony before a Jury in [the] state criminal trial proceeding in an effort to cause and facilitate the selective and malicious prosecution of the plaintiff[.]

Amended Complaint [#6] at ¶ 8. However, in her actual testimony, Bailey did not indicate that baking soda was a controlled substance. Bailey testified that she re-tested certain substances, which were confirmed to be controlled substances, but did *not* re-test a white powder substance that had already been determined was *not* a controlled substance. See, [#17-4] at 481-482. In that regard, Bailey indicated that she had not re-tested that material because it had initially tested negative for controlled substances, and because she had not been asked to re-test it by the Assistant District Attorney handling the case. Bailey also did not indicate that a scale had tested positive for cocaine. In fact, Bailey testified that she did not perform any testing on the scale. See, [#17-4] at 473. Bailey also indicated that she signed her initials to the items that she received, regardless of whether she tested them. To the extent that Plaintiff suggests that by signing her initials to certain evidence Bailey was indicating that it contained a controlled substance, he is badly mis-characterizing Bailey's testimony.

As for the claim against Banas, the Amended Complaint contends that Banas

did produce a deceptive and incriminating evidentiary report exclusively connecting the plaintiff to the unlawful possession of a controlled substance. Never provided the initial results of Lab testing. Falsely initiated a report that was a misdemeanor complaint and knew that a Felony Complaint lodged would go to trial. The said defendant produced this said report and provided same into the Erie County District Attorney's office to be used to cause the selective and malicious prosecution of the plaintiff in the matter. The theory was the scale that was used to weigh controlled substances that never

7

appeared on the scale.  The defendant's actions contributed to the selective
and malicious prosecution of the plaintiff [.] [sic]

Amended Complaint [#6] at ¶ 9.  Again, though, these allegations mis-characterize the

record, since Banas never "connected" any substances tested to Plaintiff, never indicated

that he tested a scale for drug residue, and had no control over the accusatory instruments

that were filed against Plaintiff.  See, e.g., [#17-3] at 465-466.  In fact, with regard to the

scales, Banas specifically testified that he never tested either scale for drug residue.  *Id*.

Defendants subsequently filed the subject motion [#15] for judgment on the pleadings

pursuant to Fed.R.Civ.P. 12(c) on the ground that they are immune from suit because they

are covered by the same absolute immunity afforded to prosecutors.[1] See, Defs. Memo of

Law [#15-1] at p. 3 ("Defendants should be afforded absolute immunity because they are

forensic lab technicians who analyzed evidence at the request of the prosecutor.").  In that

regard, Defendants maintain that they assisted in the prosecutorial phase of the case

against Plaintiff, after Plaintiff has already been arrested and charged.  For authority,

Defendants rely on, *inter alia*, *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995),

*Newton v. City of New York*, 738 F.Supp.2d 397, 407 (S.D.N.Y. 2010), *Goncalves v.*

*Reynolds*, 198 F.Supp.2d 278, 281 (W.D.N.Y. 2001) and *Jenkins v. City of New York*, Nos.

98Civ. 7170 JGK DFE, 98Civ. 7338 JGK DFE, 1999 WL 782509 at *16 (S.D.N.Y. Sep. 30,

1999), *aff'd* 216 F.3d 1072 (2d Cir. 2000).

Plaintiff made two submissions in response to Defendants' motion.  *See*, Docket Nos.

[#26] & [#28].  The first submission [#26] is not responsive to the motion for judgment on the

---

[1]Defendants alternatively contend that any state-law claims against them must also be dismissed. However, even construing the Amended Complaint liberally, it does not attempt to set forth any state-law claims.

pleadings, except insofar as it states in conclusory fashion that "[t]he defendants are not immune from any action." *Id*. at p. 3.   The second submission is also generally non-responsive to Defendants' motion, though it does contain the following statements: 1) "The defendants are not immune as they acted under the color of state law[.]"; and 2) "The actions of the defendants are what caused this action and are <u>NOT</u> protected by quasi judicial immunity." (emphasis in original).   To summarize, Plaintiff offers conclusory denials, but does not attempt to cite any legal authority to counter Defendants' arguments.

DISCUSSION

Defendants have moved for judgment on the pleadings, and "[t]he same standard applicable to Fed.R.Civ.P. 12(b)(6) motions to dismiss applies to Fed.R.Civ.P. 12(c) motions for judgment on the pleadings." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010) (citation omitted).   Such standard is clear:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir.2007 ) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative

level.' ") (*quoting Bell Atl. Corp. v. Twombly* ) (footnote omitted).   When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), cert. den. 531 U.S. 1052, 121 S.Ct. 657 (2000).

"While a *pro se* complaint must contain sufficient factual allegations to meet the plausibility standard, this Court affords *pro se* litigants 'special solicitude' by 'interpreting [a pro se ] complaint to raise the strongest claims that it suggests.'" *Jackson v. Pfau*, No. 12–324–pr, 2013 WL 1338712  at *1 (2d Cir. Apr. 4, 2013) (table)  (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir.2011) (alterations and quotation marks omitted)).

For claims under Section 1983, Prosecutors have absolute immunity, from actions seeking damages, for acts committed in their capacity as advocates, such as when commencing and pursuing prosecutions:

> [A] defense of absolute immunity from a claim for damages must be upheld against a § 1983 claim that the prosecutor commenced and continued a prosecution that was within his jurisdiction but did so for purposes of retaliation, or for purely political reasons.  A prosecutor is also entitled to absolute immunity despite allegations of his knowing use of perjured testimony and the deliberate withholding of exculpatory information.  Although such conduct would be reprehensible, it does not make the prosecutor amenable to a civil suit for damages.  In sum, the nature of absolute immunity is such that it accords protection from any judicial scrutiny of the motive for and reasonableness of official action. In the realm of absolute immunity, evaluation of motive and reasonableness is forbidden.  These principles are not affected by allegations that improperly motivated prosecutions were commenced or continued pursuant to a conspiracy.

*Shmueli v. City of New York*, 424 F.3d 231, 237-238 (2d Cir. 2005) (citations and internal quotation marks omitted).  On the other hand, qualified immunity, not absolute immunity,

applies when prosecutors perform investigative functions normally performed by a detective or police officer. *Zahrey v. Coffey*, 221 F.3d 342, 346 (2d Cir. 2000).[2]

In determining whether activity was investigative or prosecutorial, the Court must "apply a functional approach, looking to the function being performed rather than to the office or identity of the defendant." *Hill v. City of New York*, 45 F.3d at 660 (citation and internal quotation marks omitted). If a defendant fabricates evidence in order to provide *probable cause for an arrest*, such conduct is deemed investigative, not prosecutorial. *See, id.*, 45 F.3d at 662 (alleged fabrication of evidence to provide probable cause for arrest is investigative in nature and therefore entitled to only qualified immunity). On the other hand, once a prosecution is commenced, actions that when viewed in isolation might appear to be investigative are nevertheless prosecutorial. *See, Warney v. Monroe County*, 587 F.3d 113, 123 (2d Cir. 2009) ("[I]t is unhelpful to ascertain the prosecutor's functional role by isolating each specific act done or not done; rather, a prosecutor's function depends chiefly on whether there is a pending or in preparation a court proceeding in which the prosecutor acts as an advocate."). As one district court recently put it, "[i]nvestigative acts aimed at gathering and piecing together evidence for indications of criminal activities and determination of the perpetrators are not entitled to absolute immunity . . . while investigative acts reasonably related to decisions whether or not to begin or to carry on a

---

[2]Similarly, as to claims brought under New York State law, government employees have absolute immunity for their discretionary judicial and quasi-judicial acts. *See, Cornejo v. Bell*, 592 F.3d 121, 130 (2d Cir. 2010); *see also, Carossia v. City of New York*, 39 A.D.3d 429, 430, 835 N.Y.S.2d 102, 104 (1st Dep. 2007) ("Defendants are entitled to immunity for those governmental actions requiring expert judgment or the exercise of discretion. This immunity is absolute when the action involves the conscious exercise of discretion of a judicial or quasi-judicial nature") (citation and internal quotation marks omitted). On the other hand, under New York law, prosecutors enjoy only qualified immunity for "investigative, law-enforcement" type acts. *Claude H. v. County of Oneida*, 214 A.D.2d 964, 965, 626 N.Y.S.2d 933, 935 (4th Dept. 1995). Again, though, Plaintiff has not pleaded any state-law claims.

*particular* criminal prosecution, or to defend a conviction are." *Collins v. City of New York*, — F.Supp.2d — , 2013 WL 563436 at * 5-8 (E.D.N.Y. Feb. 15, 2013) (*citing Giraldo v. Kessler*, 694 F.3d 161, 166 (2d Cir. 2012), emphasis added, internal quotation marks omitted).

Although absolute immunity is an affirmative defense, it is appropriate to address absolute immunity in a 12(b)(6) context if the complaint clearly indicates the nature of the function for which the defendant is being sued:

> [A]lthough absolute immunity is an affirmative defense whose availability depends on the nature of the function being performed by the defendant official who is alleged to have engaged in the challenged conduct, the nature of that function is often clear from the face of the complaint. In that circumstance, the absolute immunity defense may be resolved as a matter of law on a motion to dismiss the complaint pursuant to Rule 12(b)(6).

*Shmueli v. City of New York*, 424 F.3d at 236 (citations and internal quotation marks omitted). Conversely,

> when it may not be gleaned from the complaint whether the conduct objected to was performed by the prosecutor in an advocacy or an investigatory role, the availability of absolute immunity from claims based on such conduct cannot be decided as a matter of law on a motion to dismiss.

*Hill v. City of New York*, 45 F.3d at 663 (finding that there were issues of fact as to whether prosecutor who took false videotaped statement, purportedly for use in grand jury, was acting in investigative capacity).

In the instant case, the nature of the functions performed by Defendants is evident from the Complaint. Defendants are not prosecutors, but are forensic scientists who performed testing on evidence that was seized from Plaintiff at the time of his arrest, and then testified at trial. Nevertheless, the rationale that provides absolute immunity to

prosecutors applies equally to other government officials who are involved in the judicial process. *See, Newton v. City of New York*, 738 F.Supp.2d at 406-416. The district court in *Newton* found that a forensic scientist who allegedly failed to conduct proper DNA testing that would have exonerated a criminal defendant was entitled to absolute immunity. *Id.*[3] This Court adopts the reasoning applied in *Newton* and finds that Defendants are entitled to absolute immunity for their alleged actions in fabricating evidence. In that regard, the Court finds that the Defendants' actions in evaluating evidence seized after an initial investigation resulted in Plaintiff's arrest  were more akin to advocacy than investigation. *See, Newton*, 738 F.Supp.2d at 407-408 ("[T]he determination of whether [Ryan's] actions implicate her investigatory or advocacy capacity necessarily relies on their role and function in an ongoing proceeding. . . . Ryan's analysis was [advocacy because it was] conducted for the sole purpose of determining whether *Newton's* continued incarceration  was necessarily warranted, not for a general purpose investigation to identify potential suspects in V.J.'s attack. ") (emphasis in original). Defendants are also entitled to absolute immunity insofar as Plaintiff is claiming that their trial testimony violated his constitutional rights. *See, Jones v. King*, No. 10 Civ. 0897(PKC), 2011 WL 4484360 at *6 (S.D.N.Y. Sep. 28, 2011) ("It is well established that testifying witnesses, including police officers, are entitled to absolute immunity from liability under § 1983 based on their testimony.") (citation omitted).

Alternatively, the Court also finds that the Amended Complaint is entirely conclusory and does not set forth sufficient factual allegations to state a plausible claim against any of

---

[3]*Newton*, like *Warney*,  involved a post-conviction collateral attack. To the extent that the district court in *Newton* questioned, in dicta, whether such immunity would apply in the pre-conviction context, see, 738 F.Supp.2d at 411, the Court finds that it does, for the same reasons discussed elsewhere in the *Newton* decision.

13

the Defendants. *See, Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss."). In that regard, it appears that Plaintiff is attempting to capitalize on the fact that Herky was terminated for misconduct in an unrelated case to cast doubt on the work performed by Bailey and Banas. However, the Amended Complaint does not plausibly suggest any actual wrongdoing in Plaintiff's underlying criminal action. Plaintiff's bald assertion that Defendants falsified test results to indicate the presence of controlled substances is also disingenuous inasmuch as he did not dispute at trial that controlled substances were in fact found in his home.

CONCLUSION

For the foregoing reasons, Defendants' motion [#15] is granted and this action is dismissed with prejudice. The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure. The Clerk of the Court is directed to terminate this action.

SO ORDERED.

Dated:     May 28, 2013
           Rochester, New York

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge